BROWER LAW GROUP
A Professional Corporation
STEVEN BROWER (SBN: 93568)
Steve@BrowerLawGroup.com
TAE J. IM (SBN: 139334)
Tae@BrowerLawGroup.com
23601 Moulton Parkway, Suite 220
Laguna Hills, CA 92653
Telephone: (949) 668-0825

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALEM MEDIA GROUP, INC., | Case No. |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **1) DECLARATORY JUDGMENT;**<br>**2) BREACH OF CONTRACT;** |
| FEDERAL INSURANCE COMPANY, | **3) TORTIOUS BREACH OF THE**<br>**COVENANT OF GOOD FAITH**<br>**AND FAIR DEALING** |
| Defendant. | **DEMAND FOR JURY TRIAL** |

## GENERAL ALLEGATIONS

### Jurisdiction and Parties

1.      Pursuant to Local Rule 8-1, requiring that the first paragraph set forth the basis for jurisdiction, this Court has subject matter jurisdiction over this case as a matter of diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that it is between citizens of different states and the amount in controversy exceeds $75,000, as more fully alleged herein.

2.      Plaintiff Salem Media Group, Inc. ("Salem Media") is a corporation, organized and existing under the laws of the State of Delaware, with a principal place of business in the County of Ventura, State of California, which is within the Central District of California.  Salem Media Group, Inc. was formerly known as Salem Communications Corporation.

3.     Salem Media is informed and believes, and therefore alleges, that Defendant Federal Insurance Company ("Federal Insurance") is a corporation, organized and existing under the laws of the State of Indiana, with a principal place of business in the State of New Jersey.  Federal Insurance has elected to qualify to do business within the State of California since at least 1904 (as a New Jersey corporation, which designation has never been changed with the California Secretary of State) and Plaintiff is informed and believes that Federal Insurance has done business within the State of California continuously since that time.   Federal Insurance is, for the purposes of this Complaint, an insurance company.

4.     Venue is proper before this Court in that Federal Insurance sold and delivered the relevant policy of insurance to Salem Media in the County of Ventura, which is therefore the place of the contract, and Federal Insurance also breached the obligations thereunder within the County of Ventura, the place in which performance by payment of policy benefits was due, all as more fully set forth below.

**Insurance Policies**

5.     Salem Media purchased, from Federal Insurance, a "MediaGuard" insurance policy, for the policy period of April 1, 2012 through April 1, 2013, which insurance was renewed every year from at least that time until the present.  The policy number was always 8211-5756 (jointly "Federal Primary Policy").

6.     For the policy period of April 1, 2012 through April 1, 2013 the policy limit was $1,000,000 with a retention amount of $75,000.  The "Covered Media" was stated to be "All programming and publications produced or disseminated by the Insured and all radio stations owned and operated by the Insured."  A copy of the policy for 2012-13 is attached hereto as Exhibit A.

7.     While there were certain modifications between 2012 and the present, including changes in the policy limits, changes in the retention amount, changes in the premium and changes in some of the endorsements, the main coverage form (19

pages identified as form 14-02-14078) was always provided on the same version of that form, which was dated 04/2008.

8.     Salem Media also purchased, from Federal Insurance, a "Chubb Commercial Excess and Umbrella Insurance" policy, for the policy period of April 1, 2012 through April 1, 2013.  The policy number was 7907-66-95 ("Federal Excess Policy").   The policy limit was $25,000,000.   On the "Schedule of Underlying Insurance" it explicitly lists the Federal Primary Policy as one of the policies to which the Federal Excess Policy applied.

9.     MediaGuard is a registered service mark of The Chubb Corporation, subsequently assigned to Chubb INA Holdings, Inc. (jointly "Chubb") which Salem Media is informed and believes, and therefore alleges, is a parent corporation of Federal Insurance.

10.    In a filing with the U.S. Patent & Trademark Office, made under penalty of perjury by Bruce S. Londa of Norris, McLaughlin & Marcus, P.A., dated January 20, 2015, Chubb described MediaGuard as:

> E&O Liability Protection for Traditional and Nontraditional Media Organizations.

> Regardless of a company's business, if it gathers and disseminates information, then it faces the same litany of media liability exposures as a publisher, broadcaster, advertising agency, video or file producer, or any other media organization.

> That's why we created MediaGuard by Chubb – a broad, flexible errors and omissions (E&O) liability insurance policy that specifically addresses the nature of these risks.

MediaGuard by Chubb highlights:

- "Occurrence form" covers activities that occur during the policy period (regardless of when claim is first made).

- "All risk" coverage goes beyond specified "named perils" to include risk arising out of the core functions of advertising, broadcasting, publishing and video and film production: gathering and creating information and communicating it to the public.
- Built-in coverage for advertising content.
- Negligent publication coverage for any claim alleging harm to a person or entity that acted or failed to act in reliance upon the information published.
- Our customer fully controls whether to settle or retract content and can choose between reimbursement of defense costs or duty to defend.

Those same statements appear, as of the date of the filing of this action, on the Chubb website at www.chubb.com/us-en/business-insurance/professional-liability-protection-for-media-organizations.aspx.

11.    In a filing with the U.S. Patent & Trademark Office, made under penalty of perjury by Matthew A. Homyk of Blank Rome LLP, dated April 18, 2018, Chubb described MediaGuard as set forth in Exhibit C to this Complaint.

12.    Salem Media is informed and believes, and therefore alleges, that Salem Media provided Federal Insurance with all information requested by Federal Insurance regarding the nature and operation of Salem Media prior to the issuance of the Federal Primary Policy and the Federal Excess Policy for the policy period beginning April 1, 2012.  Federal Insurance knew, when it issued the Federal Primary Policy and the Federal Excess Policy, that Salem Media was intending to acquire insurance which would provide coverage for claims based on alleged negligence in advertising statements including, but not limited to, claim such as the Gallagher Claim.

13.    Pursuant to Insuring Clause 1.A. of the Federal Primary Policy:

The Company shall pay **Loss** on behalf of an **Insured** on account of any **Claim** arising directly out of the **Insured's Media Activities**, provided that the **Media Activities** giving rise to the **Claim** occurred during the **Policy Period**.

14. Pursuant to the Federal Primary Policy the term Loss is defined to include Defense Costs.  The policy further indicates that Salem Media has the option of selecting defense counsel of its choice to defend the action subject to Federal Insurance's obligation to "advance on a current basis Defense Costs owed under [the] Policy."

15. Pursuant to the Federal Primary Policy, and consistent with the intent and purpose of the insurance coverage, the term Media Activities is broadly defined to include:

(A) any actual or alleged act, error or omission arising directly out of the gathering, recording, collection, writing, editing, publication, dissemination, exhibition, broadcast or release of **Matter** in connection with the **Covered Media**, including but not limited to any actual or alleged:

. . . (6) negligence in connection with the content of **Matter**, including but not limited to any **Claim** alleging harm to a person or entity who acted or failed to act in reliance upon such **Matter** . . . [emphasis added]

16. Pursuant to the Federal Primary Policy, and consistent with the intent and purpose of the insurance coverage, the term Matter is broadly defined to include:

**Matter** means the content of any communication of any kind whatsoever, regardless of the nature or form of such **Matter** or the medium by which such **Matter** is communicated, including but not limited to language, data, facts, fiction, music, photographs, images,

BROWER LAW GROUP
A PROFESSIONAL
CORPORATION

advertisements, artistic expression, or visual or graphic materials. [emphasis added]

17.   Salem Media is informed and believes, and therefore alleges, that Federal Insurance drafted the Federal Primary Policy without consultation with, or modification by, Salem Media, except to the extent, if any, that Federal Insurance offered, often for an additional premium, the option of adding other and further provisions to the Federal Primary Policy, which provisions were also drafted by Federal Insurance.  As such, any ambiguity in the Federal Primary Policy must be construed against Federal Insurance and in favor of coverage for Salem Media.

18.   The obligations owed by Federal Insurance to Salem Media, under the Federal Primary Policy, continue in full force and effect as of this date, subject to the terms and conditions thereof.  Salem Media has complied with every obligation under the Federal Primary Policy, except those which have been excused by the conduct of Federal Insurance, if any.

**Gallagher Claim**

19.   On or about November 11, 2019, the Receiver for W. Neil "Doc" Gallagher, Gallagher Financial Group, Inc. and W. Neil Gallagher, Ph.D. Agency, Inc. (jointly "Gallagher Entities"), sent a letter ("Receiver Letter") to Salem Media contending that Salem Media was liable to the Gallagher Entities for an amount in excess of $1 million and perhaps as much as $24 million.  The Receiver Letter contended, in relevant part, that advertisements published by Salem Media on certain of its radio stations, along with paid endorsements by some of the Salem Media radio personalities negligently induced individuals to enter into a business relationship with the Gallagher Entities.  The letter further contended that those individuals lost money because the Gallagher Entities were engaged in what is commonly referred to as a Ponzi scheme, a scheme in which money was received by the Gallagher Entities and, instead of being utilized for the intended purposes, were used in part to make

payments due to earlier customers and were, in substantial part, fraudulently diverted by the Gallagher Entities to their own use and benefit.

20.    The Receiver Letter specifically contended that the Gallagher Entities were active participants and undertook such actions with both knowledge and intent to deprive the customers of the Gallagher Entities of money.  In fact, on or about March 27, 2020, William Neil Gallagher (aka "Doc" Gallagher), one of the Gallagher Entities, entered a "Judicial Confession" which included, but is not limited to, that he was guilty of:

> . . . Knowingly and intentionally misrepresenting that defendant and Gallagher Financial Group, Inc., would use money from purchasers to buy fixed index annuities, mutual funds, United States Treasury Bons, life settlements and shares of stock in the "Diversified Growth and Income Strategy Account" or "D.G.I.", said information being a relevant fact; and

> . . . Knowingly and intentionally misrepresenting that purchaser's principal was safe, said information being a relevant fact.

21.    Just as was stated in the Judicial Confession, such information was, in fact, not revealed by the Gallagher Entities to Salem Media at any time while Salem Media was broadcasting advertising paid for by the Gallagher Entities.

22.    The Receiver Letter further contended that Salem Media was negligent in failing to determine information about the Gallagher Entities, even though that was the same information which the Receiver himself, acting on behalf of the Gallagher Entities, has indicated that the Gallagher Entities were knowingly and intentionally mispresenting to their own customers and to everyone else, including to Salem Media.  Indeed, the Receiver Letter actually asserted that Salem Media, based on the publication of an article in "D" magazine, should have known that the Gallagher Entities were conducting a Ponzi scheme, even though "D" magazine is unrelated to Salem Media, and even though the "D" magazine article was published years before

the Gallagher Entities even began their advertising with Salem Media, and even though the "D" magazine article was equally publicly available to all the potential and actual customers of the Gallagher Entities, and even though the "D" magazine made no reference to the Gallagher Entities being engaged in a Ponzi scheme.

23.     Salem Media timely tendered the Receiver Letter to Federal Insurance pursuant to the terms of the Federal Primary Policy.  Salem Media is informed and believes that Federal Insurance did not request any other information from Salem Media prior to sending a letter, in response to the tender, stating that Federal Insurance had concluded that there is no coverage for the claims set forth in the Receiver Letter.

24.     Specifically, by letter dated January 6, 2020, Gina M. Cocchiola, Esq., a Senior Claim Director with Chubb North American Financial Lines Claims responded, on behalf of Federal Insurance, to the tender of the Receiver Letter by Salem Media.  Salem Media is informed and believes, based on information obtained from the State of Connecticut Judicial Branch and from the State Bar of California, that Ms. Cocchiola is licensed to practice law in Connecticut but is not licensed to practice law in California.  The letter concluded that "there is no coverage for this matter under the Policy."

25.     On May 1, 2020, Salem Media was served with a Citation and Petition (equivalent to a Summons and Complaint) in a lawsuit entitled *Cort Thomas, in his capacity as Receiver, and as Assignee v. Salem Media Group, Inc., Mark Davis, Inspiration Media of Texas, LLC and Bison Media, Inc*. which was filed as Cause No. CC-20-01021-C in the County Court at Dallas County, Texas ("Gallagher Suit"). A copy of the Gallagher Suit is attached to this Complaint as Exhibit D.

26.     The plaintiff in the Gallagher Suit, Cort Thomas, is the receiver for the Gallagher Entities and is the individual on whose behalf the earlier Receiver Letter was sent.  The Gallagher Suit alleges that Mr. Thomas is suing in two separate capacities.  First, he is suing as the receiver of the Gallagher Entities.  Second, he is

suing as the assignee for 189 investors in the Gallagher Diversified Growth and Income Strategies Account, which account is alleged to have been a fraud perpetuated by the Gallagher Entities.

27.   The Gallagher Suit, which includes, but is not limited to, a cause of action for Negligent Misrepresentation, appears to seek damages of approximately $24 million.  Salem Media retained counsel to defend that action and immediately began to incur, and has continued to incur, necessary and reasonable costs of defense.

28.   Salem Media timely tendered the Gallagher Suit to Federal Insurance pursuant to the terms of the Federal Primary Policy and the Federal Excess Policy. Salem Media is informed and believes that Federal Insurance did not request any other information from Salem Media prior to sending a letter stating that, once again, Federal Insurance had concluded that there is no coverage for the claims set forth in the Gallagher Suit.

29.   Specifically, by letter dated June 4, 2020 ("Denial Letter"), Gina M. Cocchiola, Esq., a Senior Claim Director with Chubb North American Financial Lines Claims responded, on behalf of Federal Insurance, to the tender of the Gallagher Suit by Salem Media.  The Denial Letter concluded "As a result of the foregoing, there is no coverage for this matter under the Policy.  As we believe this matter is excluded in its entirety, Federal will be providing neither a defense nor indemnity for this matter."

30.   The Denial Letter included, by way of example, and without limitation, a number of material misrepresentations:

-      The Denial Letter falsely stated "We do not have the dates as to when any programs and/or advertisements were produced or disseminated . . ."  In fact, the Gallagher Complaint specifically alleges multiple potentially relevant dates including December 21, 2012 (the first date when the Gallagher Entities paid Salem Media for advertising) and January 1, 2013 (the first date when the Gallagher Entities paid

"talent fees" to Salem Media for the service of Salem Media employee Mark Davis). Both of these dates were during the 2012 to 2013 policy period of the Federal Primary Policy. And Federal Insurance did not request, at any time prior to the issuance of the Denial Letter, that Salem Media provide any information about the dates on which advertisements were broadcast for the Gallagher Entities.

- The Denial Letter falsely stated that the relevant policy limits were $3 million per claim with a retention of $250,000. However, as was well known to Federal Insurance, because it comes from their own marketing materials (see ⁋ 10, above), the Mediaguard policy is an Occurrence form which covers activities that occur during the policy period (regardless of when a claim is first made). Moreover, pursuant to section XVI.(A) of the Federal Primary Policy "In the event of a Claim (or Related Claims) arising out of a series of related Activities, the entire series of related Activities shall be deemed to have occurred on the date of the first publication, dissemination or release of the Matter giving rise to such Claim (or Related Claims) . . ." Therefore, the correct policy limits are $1 million with a retention of only $75,000.

- The Denial Letter falsely stated that section III(A)(6) of the Federal Primary Policy, an exclusion relating to an offer to sell or purchase securities, bars coverage here. Salem Media denies that such exclusion serves to bar coverage, particularly as it relates to the defense of the Gallagher Suit. First, there is no allegation in the Gallagher Suit that Salem Media sought to sell or purchase any securities, nor is there any basis to make such an allegation. Second, there is no allegation that Salem Media received payment for anything other than advertising and talent fees for employees, all of which occurred in the ordinary course of the business of Salem Media as a broadcaster and which had no

relation to any effort by Salem Media to sell or promote any securities, particularly in that Salem Media was not promoting or selling any securities. Third, the accusation that a radio station allowed an advertiser to purchase airtime and to run commercials which, years later, were determined to be intentionally fraudulent, is the core risk which the Mediaguard policy was intended to insure. Fourth, the Federal Primary Policy includes several provisions, including an Allocation provision, which was intended to be the remedy where a claim might potentially arise from both covered and uncovered conduct. However, Salem Media would contend that having wrongfully denied that there was any duty to pay defense costs, Federal Insurance has waived the right to rely upon the Allocation provision to minimize its contribution toward Defense Costs.

31.     By letter dated July 10, 2020 ("Excess Denial Letter"), Michael Moore, an Executive Claim Director with Chubb North American Casualty Claims responded, on behalf of Federal Insurance, to the tender of the Gallagher Suit by Salem Media. The Excess Denial Letter concluded "It is the position of Federal that there is no duty to defend or indemnify the Claim as the Policy's insuring agreements have not been triggered and certain exclusionary language in the Policy applies."

32.     The Excess Denial Letter included, by way of example, and without limitation, a number of material misrepresentations:

-       The Excess Denial Letter falsely stated that the relevant policy terms began in 2014, rather than correctly stating that it began in 2012, which information was available in the Gallagher Suit reviewed by Federal Insurance.

-       The Excess Denial Letter failed to even refer to or consider the excess insurance pursuant to the Federal Primary Policy, even though they were both written by Federal Insurance and even though the matter

**Complaint**

1  had been tendered to both the Federal Primary Policy and the Federal
2  Excess Policy.

3      33.    Salem Media denies that it is liable for the damages alleged in the
4  Gallagher Suit and denies that it has violated the legal rights of any of the plaintiffs
5  in the Gallagher Suit.

6      34.    However, Salem Media alleges that it is entitled to all reasonable and
7  necessary defense costs and, if ultimately necessary, whether for settlement or
8  judgment, indemnity, under the Federal Primary Policy and the Federal Excess
9  Policy.

10     35.    Upon receipt of the tender from Salem Media, Federal Insurance had
11 not only the right, but the also the duty, to fully and timely investigate the Gallagher
12 Suit and, only after obtaining all of the factual and legal authority which it felt was
13 appropriate, to make an appropriate and legally sufficient coverage determination.
14 Federal Insurance knew that if it denied coverage it was precluded from raising any
15 ground in support of that denial unless it believed, in good faith, that it could
16 judicially prove such ground based on the facts in its possession at the time of the
17 denial.

18     36.    Salem Media is informed and believes, and therefore alleges, that
19 Federal Insurance assigned responsibility for handling of the insurance claim for the
20 Gallagher Suit to Gina M. Cocchiola for the Federal Primary Policy and Michael
21 Moore for the Federal Excess Policy (jointly "Chubb Adjusters").  Salem Media is
22 informed and believes, and therefore alleges, that the matter was assigned to the
23 Chubb Adjusters because they were the most experienced claims handlers for
24 MediaGuard claims, and because they were familiar with California law as it applied
25 to interpretation of insurance policies, and because they had the knowledge and
26 experience to make strategic decisions regarding coverage, and because they had the
27 authority to act on behalf of Federal Insurance in confirming or denying coverage
28 and because they had the ability to fully and clearly communicate such coverage

decisions for the strategic benefit of Federal Insurance and to know that they were intentionally waiving certain items by their strategic decisions.

37.     Salem Media is informed and believes, and therefore alleges, that Federal Insurance considered all facts, evidence and other information which it believed was necessary and appropriate to make a full coverage determination. Salem Media is further informed and believes, and therefore alleges, that Federal Insurance obtained full and complete cooperation from Salem Media in that Salem Media was ready, willing and able to respond to any requests for documents and/or requests for access to individuals who would have additional information which might be relevant to the coverage investigation. Federal Insurance did not request any further information from Salem Media, prior to issuing its coverage decision, because Federal Insurance made a determination that it already had all the evidence which it believed it needed to make a legally binding coverage decision, including its decision to waive any matters which were not fully investigated or which represented in a certain manner.

38.     The Denial Letter and the Excess Denial Letter purported to reserve the right to assert other and different grounds for limiting and/or denying coverage if it were determined that Section III(A)(6) does not bar coverage. However, Federal Insurance did not undertake to investigate those grounds or to explain how or if they would have any potential or actual application to the Gallagher Suit. Salem Media is informed and believes that the Chubb Adjusters were aware of the law and procedure and the policies and procedures of Federal Insurance and Chubb regarding the handling of claims and that, for strategic reasons and not due to negligence or lack of knowledge, they made a number of tactical decisions, within the course and scope of their authority on behalf of Federal Insurance, which was ratified by both the sending of the Denial Letter and the Excess Denial Letter and which represented an intention to waive the right to assert any defense to coverage which was not

properly investigated and explained in the Denial Letter and/or the Excess Denial Letter.

39.     By its wrongful denial of coverage, Federal Insurance has breached the contract represented by the Federal Primary Policy and the Federal Excess Policy. Upon such breach Salem Media is relieved of any further obligation to provide notice to Federal Insurance or to otherwise comply with most of the terms and conditions within the Federal Primary Policy and the Federal Excess Policy.

40.     Pursuant to California Insurance Code section 790.03(h), it is unlawful for an insurer to: (2) fail to acknowledge and act promptly upon tender of a claim; (3) fail to adopt and implement reasonable standards for prompt investigation and processing of claims; (6) compel insureds, such as Salem Media, to institute litigation to recover amounts due; and (13) fail to promptly provide a reasonable explanation for any denial of coverage.

## FIRST CAUSE OF ACTION
## DECLARATORY JUDGMENT

41.     Salem Media realleges and incorporates herein by reference, as though set forth in full, paragraphs 1 through 40 of this Complaint.

42.     Salem Media has incurred costs of defense in relation to the Gallagher Suit, which defense costs should properly be reimbursed by Federal Insurance, and such defense should be pursuant to the limits of the policy in effect for 2012 to 2013, where the retention is only $75,000 and as to which the Federal Excess Policy applies.

43.     Federal Insurance has stated that there is no coverage for the Gallagher Suit and has failed and refused to pay for the costs of defense reasonably and necessarily incurred by Salem Media.

44.     There is an actual and present controversy between Salem Media and Federal Insurance regarding the extent of the obligations of Federal Insurance under the terms of the Federal Primary Policy, and the Federal Excess Policy if the limits of the Federal Primary Policy are exhausted, such that this Court should issue a

BROWER LAW GROUP
A PROFESSIONAL
CORPORATION

**Complaint**

declaratory judgment in favor of Salem Media, and against Federal Insurance, finding that there is, at a minimum, a duty to reimburse Salem Media for the costs of defense in the Gallagher Suit and should further determine that, as a result of its wrongful denial of coverage, that Federal Insurance is obligated to pay for any settlement of the Gallagher Suit, and further finding that the policies in effect for 2012 to 2013 are the policies applicable to the Gallagher Suit.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT

45.     Salem Media realleges and incorporates herein by reference, as though set forth in full, paragraphs 1 through 40 of this Complaint.

46.     On or about November, 2019, and thereafter, Federal Insurance breached the Federal Primary Policy by failing and refusing, and continuing to fail and refuse, to pay the full amount of all reasonable and necessary Defense Costs which were incurred by Salem Media in defense of the Gallagher Suit.

47.     Salem Media has been damaged in the amount of unreimbursed defense costs which it incurred in the course of responding to and defending the Gallagher Suit.  Salem Media has also been foreseeably damaged by other consequential damages which it has incurred as described herein, and subject to proof.  Salem Media does not know the precise amount thereof, but Salem Media is informed and believes, based on defense costs already incurred, and therefore alleges, that the total amount in dispute will be in excess of $75,000 above and beyond the retention amount.

## THIRD CAUSE OF ACTION
## BREACH OF THE COVENANT
## OF GOOD FAITH AND FAIR DEALING

48.     Salem Media realleges and incorporates herein by reference, as though set forth in full, paragraphs 1 through 40 of this Complaint.

49.     Federal Insurance was obligated to and must pay for defense costs incurred by Salem Media in defense of the Gallagher Suit.

50.     The denial of coverage by Federal Insurance was unreasonable because the reason stated did not preclude coverage and therefore did not preclude a duty to defend and Federal Insurance's conduct in asserting that there was no coverage therefore constitutes a tortious breach of the covenant of good faith and fair dealing.

51.     As a result of the breaches by Federal Insurance, Salem Media has incurred substantial financial obligations to pay amounts for defense costs which amounts are properly covered under the Federal Primary Policy.  Salem Media also contends that Salem Media is entitled to the payment of interest from the date on which Federal Insurance should have reimbursed Salem Media.

52.     As a further proximate result of the breaches by Federal Insurance, Salem Media has been required to expend attorney's fees and costs for experienced insurance coverage litigation counsel to obtain the insurance policy benefits to which it was entitled under the Federal Primary Policy.  Pursuant to the principles of *Brandt v. Superior Court*, Salem Media is entitled to reimbursement of such amounts from Federal Insurance.  Salem Media is informed and believes, and therefore alleges, that the reasonable value of such damages, which will continue through the trial in this matter, will exceed the jurisdictional minimum of this Court.

53.     The conduct of Federal Insurance in denying coverage based on a single exclusion which does not bar a duty to defend, and which was undertaken without a proper legal and/or factual basis, is contrary to the applicable legal principles, and is therefore conduct which is fraudulent, malicious or which, at a minimum, evidences a conscious disregard for the rights of Salem Media.  Moreover, Salem Media is informed and believes, and therefore alleges, that such conduct is the regular business practice of Federal Insurance and has been utilized against other parties insured by Federal Insurance.  Federal Insurance should therefore be required to pay punitive

damages for the purpose of attempting to deter future unlawful conduct by them in an amount subject to determination by the trier of fact.

WHEREFORE, Salem Media prays for judgment as follows:

ON THE FIRST Cause of Action:

1.      For a Declaratory Judgment in favor of Salem Media and against Federal Insurance on every issue properly brought before this Court.

2.      Such other and further Declaratory Judgment as may appear proper at the time of determination.

ON THE SECOND Cause of Action:

3.      For all unreimbursed defense costs incurred by Salem Media which amounts are properly covered under the Federal Primary Policy and/or the Federal Excess Policy, which amount will be in excess of $75,000.

4.      For interest on sums which were not timely paid to Salem Media.

5.      For all other damages incurred by Salem Media as a result of any breach of contract.

ON THE THIRD Cause of Action:

6.      For attorney's fees and costs incurred in this matter pursuant to the principles of *Brandt v. Superior Court*.

7.      For punitive damages, subject to proof.

ON ALL Causes of Action:

8.      For interest on all sums where properly owed.

9.      For costs of suit incurred herein.

10.     For such other and further relief as the court may deem just.

DATED:  August 4, 2020                    BROWER LAW GROUP
                                          A Professional Corporation


                                          By:  /s/ by ECF
                                          STEVEN BROWER
                                          Attorneys for Plaintiff

1

## **DEMAND FOR JURY TRIAL**

2

Salem Media hereby demands a trial by jury as to each claim and/or issue as

3

to which it is so entitled.

4

DATED:  August 4, 2020                    BROWER LAW GROUP
                                          A Professional Corporation

5

6

7                                        By:  /s/ by ECF
                                              STEVEN BROWER

8                                             Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28